FILED
IN CLERK'S OFFICE
U S. DISTRICT COURT E.D.N.Y
☆ AUG 28 2014 ☆
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
FERNANDA LUNA,

                              Plaintiff,

    -against-

HDMP LLC, d/b/a HAPPY DOGS AT McCARREN
PARK and JENNIFER CHENG,

                              Defendants.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

13-CV-3325 (SLT)(RML)

**TOWNES, United States District Judge:**

       Plaintiff Fernanda Luna ("Luna") commenced this action against Happy Dogs McCarren Park ("HDMP") and Jennifer Cheng ("Cheng") (collectively, "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 et seq., alleging unpaid wages, unlawful withholding of gratuities, and unlawful retaliation. Defendants now move for summary judgment. (Docket No. 12). For the reasons set forth below, the Court grants the motion in part, denies it in part, and reserves decision as to the remaining claims.

## I. BACKGROUND

### A. Facts

       The following facts are drawn from the parties' admissible submissions and are viewed in the light most favorable to Luna, the non-moving party.

       Cheng is the owner and operations manager of HDMP, a business in Brooklyn, New York, that provides daycare, boarding, baths, training, and retail services for dogs. (Defs. 56.1 ¶¶ 1-2.) Overnight attendants clean the facility, are "present with the dogs while they sleep," and

are available for emergencies. (Defs. 56.1 ¶ 3). They are the only personnel present until morning and receive a flat fee based upon the number of dogs boarded. (Defs. 56.1 ¶¶ 5, 10). During daytime hours, HDMP employs both full-time and part-time attendants who are paid an hourly wage. (Defs. 56.1 ¶¶ 9, 13). Daytime employees receive tips directly from customers for baths, but HDMP pools tips for all other services and distributes the money to staff during the quarterly meeting based upon hours worked. (Defs. 56.1 ¶¶ 15-17).

On March 7, 2013, Luna emailed Cheng to inquire about an "evening dog handler" or "overnight attendant" position at HDMP. (Defs. 56.1 ¶¶ 20-21; Decl. of Phillip A. Wellner, dated Oct. 11, 2013 ("Wellner Decl.") Exs. 1, 7). After two rounds of interviews, Luna was hired for a three-month probationary period as a part-time employee during the day. (Defs. 56.1 ¶¶ 23, 30). She also worked as an overnight attendant on April 3, April 18, April 25, and May 2, 2013, for which she was paid $59, $75, $97.50, and $84, respectively, by cash and check. (Defs. 56.1 ¶ 28).

On April 16, 2013, Luna failed to return a client's keys to HDMP and, as a result, the dog could not be picked up the following morning. (Defs. 56.1 ¶¶ 33-34; Wellner Decl. Ex. 6). On May 4, 2013, Luna failed to crate a client's dog despite written instructions and a reminder from the facility. (Defs. 56.1 ¶ 44). The same day, a dog was injured while under Luna's care, though the extent and circumstances of the injury are in dispute. (Defs. 56.1 ¶¶ 42, 43; Aff. of Jennifer Cheng, dated Oct. 3, 2013 ("Cheng Aff."), ¶ 40; Aff. of Fernanda Luna, dated Oct. 23, 2013 ("Luna Aff."), ¶ 23).

On May 2, 2013, HDMP sent an email notifying staff members about the upcoming quarterly meeting. (Wellner Decl. Ex. 2). In response to Luna's questions, Cheng wrote that the meeting was mandatory, unpaid, and usually lasted two hours. (Id.). Luna expressed concern

that this arrangement violated the FLSA because "[t]ime spent in the meeting counts as worked hours and should be paid." (Id.). Cheng wrote back that there was no FLSA violation because the "the dinner alone often exceeds the pay... and the dinner is something the staff voted in the past to get in lieu of pay." (Id.). Cheng added that discretionary bonuses were distributed during the meeting and that, "[w]ithout a valid reason for absence, there will be an adverse effect on employment." (Id.). Luna responded that this requirement "comes as a surprise to me" and that she would "never agree" to relinquish her pay. (Id.). Luna contends that she "also complained to the New York State Department of Labor ('DOL') about these policies." (Luna Aff. ¶ 18).

On May 6, 2013, after a conversation that is the subject of dispute, Cheng terminated Luna's employment. (Defs. & Pl. 56.1 ¶ 49) The following day, Cheng sent Luna two final paychecks with a letter listing reasons for the termination. (Defs. 56.1 ¶¶ 51, 52). To date, Luna has not picked up her tips that Defendants contend were set aside during the quarterly meeting. (Defs. & Pl. 56.1 ¶¶ 56, 57).

### B. Procedural History

On June 11, 2013, Luna filed her complaint pursuant to the FLSA and NYLL against HDMP and Cheng, alleging that Defendants (1) failed to pay minimum wage; (2) failed to pay daily spread-of-hours compensation; (3) unlawfully retained and withheld Luna's gratuities; and (4) retaliated against her for opposing these alleged violations. Luna seeks unpaid wages and other damages, as well as attorney fees and costs.

On October 11, 2013 – prior to the commencement of discovery – Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that Luna was an independent contractor during her work as an overnight attendant, that HDMP did not retain her

gratuities, and that Luna was fired for poor work performance. (Docket No. 12 Ex. 18 ("Defs. Mem.")). The motion is fully briefed.

## II. LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor." Esposito v. Quatinez, 09 CV 0421 DRH GRB, 2014 WL 842766, at *2 (E.D.N.Y. Mar. 5, 2014). Generally, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).

## III. DISCUSSION

### A. Employee vs. Independent Contractor

The threshold question in this case is whether Luna is properly classified under the FLSA and NYLL as an independent contractor or as an employee for her overnight work. See Magnuson v. Newman, No. 10 Civ. 6211 (JMF), 2013 WL 5380387, at *6 (S.D.N.Y. Sept. 25, 2013) ("[T]he FLSA provides protection to 'employees' but not to independent contractors."); Deboissiere v. Am. Mod. Agency, No. 09 Civ. 2316 (JS) (MLO), 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010) ("New York's labor laws apply only to employees, not independent contractors.").

4

Given the fact-intensive nature of the FLSA and NYLL tests, "courts can and do grant summary judgment on this threshold inquiry, but only where there are no disputed issues of material fact." Landaeta v. New York and Presbyterian Hosp., Inc., No. 12 Civ. 4462 (JMF), 2014 WL 836991, at *4 (S.D.N.Y. Mar. 4, 2014); see Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988) ("The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts – whether workers are employees or independent contractors – is a question of law."); Melbourne v. New York Life Ins. Co., 707 N.Y.S.2d 64, 66 (1st Dep't 2000) ("Control . . . is a critical factor . . . and . . . typically involves a question of fact. . . . However, where the evidence on the issue . . . presents no conflict, the matter may properly be determined by the court as a matter of law."). As the standards for determining employee status under these statutes are not identical, the Court addresses them separately. Still, it is noteworthy that "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart v. Rick's Cabaret Intern., Inc., 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013).

1.   **FLSA**

It is well settled that "the striking breadth of the FLSA's definition of employ" is meant "to effectuate the remedial purposes of the act." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (internal quotation marks omitted). The Second Circuit has adopted an "economic reality" test to determine whether an individual is an employee or an independent contractor. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Typically courts consider the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working

5

relationship, and (5) the extent to which the work is an integral part of the employer's business.

Jimenez v. KLB Foods, Inc., No. 12 Civ. 6796 (JPO), 2014 WL 2738533, at *2 (S.D.N.Y. June 17, 2014 (quoting Brock, 840 F.2d at 1058-59). Under the FLSA, employment is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Irizarry, 722 F.3d at 104. The primary concern is "whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." Jimenez, 2014 WL 2738533, at *2 (quoting Brock, 840 F.2d at 1059).

### a. Degree of Control

The record indicates that Defendants set the hours for Luna's overnight position and have control over the conditions of that work. Although Luna could allocate her cleaning duties as she chose over the course of the 11-hour shift – and could sleep or otherwise occupy herself when the tasks were complete – she nevertheless was required by HDMP to remain on the premises at all times. As the Second Circuit has observed in a somewhat different context, "exertion is not necessarily required for an activity to be compensable [under the FLSA] because 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.'" Singh v. City of New York, 524 F.3d 361, 367 (2d Cir. 2008) (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)).

That HDMP, for tax purposes, treated overnight attendants as independent contractors – and that Luna may have acquiesced to the designation, (Defs. 56.1 ¶¶ 12, 25, 26) – does not create a genuine issue of fact for trial. See Brock, 840 F.2d at 1059 ("[A]n employer's self-serving label of workers as independent contractors is not controlling."); Trejos v. Edita's Bar and Rest., Inc., No. CV-08-1477 (ARR), 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009) ("[T]he subjective intent of the parties in forming the employment relationship has little to no

significance in determining whether a plaintiff is an independent contractor or employee."). The first factor therefore weighs in favor of Luna.

### b. Opportunity for Profit or Loss and Investment in Business

Defendants' argument that "overnight attendants are independent contractors [because] their revenue from overnight work varies according to the number of dogs that are boarded," (Defs. Mem. at 10), is unavailing. Defendants offer no facts to show, for instance, that Luna had any role in developing HDMP's services or could influence the number of dogs the company boarded each night to increase her profit. Once Luna agreed to a shift, she had no control over the requirements of her work or the amount she earned. Accordingly, the second factor weighs in favor of Luna.

### c. Degree of Skill and Independent Initiative Required

Defendants do not suggest that an overnight attendant must possess any particular degree of skill. The fact that Luna could perform her cleaning duties whenever she chose during the shift does not mean that she was required to show independent initiative for purposes of this inquiry – especially drawing all inferences in her favor.

### d. Permanence or Duration of Relationship

Luna worked at HDMP from March 18 to May 6, 2013, though she was initially hired for a three-month probationary period. (Defs. 56.1 ¶ 23). She was not required to work exclusively at HDMP, and the record indicates that she held at least one other paid job. (Wellner Decl. Ex. 6 at 1). Although this factor favors Defendants, "it is entitled to only modest weight in assessing employee status under the FLSA." Hart, 967 F. Supp. 2d at 921. The "transient nature of [a] work force . . . [is] 'not dispositive of independent contractor status'" and "[e]mployees may work for more than one employer without losing their benefits under the FLSA." Gayle v.

7

Harry's Nurses Registry, Inc., No. CV-07-4672 (CPS) (MDG), 2009 WL 605790, at *8 (E.D.N.Y. Mar. 9, 2009) (quoting Brock, 840 F.2d at 1060-61). It follows that "the irregular nature of plaintiff's work for defendants is no bar to a finding that she was an employee within the meaning of the FLSA." Id.

### e. Extent to Which Work Integral to Business

Defendants describe HDMP as a business providing "daycare, boarding, baths, training, and retail services for dogs." (Def. 56.1 ¶ 1). Drawing all inferences in Luna's favor, it appears that overnight attendants – who perform the "boarding" service – are integral to HDMP's operations. Accordingly, this factor weighs in favor of Luna.

### f. Balancing Factors

Four of the five factors, to varying degrees, weigh in favor of finding that Luna was an employee when she worked for HDMP as an overnight attendant. Moreover, "[t]he factors are not exclusive. . . . [A]ny relevant evidence may be considered, and mechanical application of the test is to be avoided." Brock, 840 F.2d at 1059. Indeed, the Court cannot ignore the fact that Luna often transitioned from a 5 p.m.-to-8 p.m. daytime shift directly to an 8 p.m.-to-7 a.m. overnight shift at the same location and with the same overall purpose of caring for dogs. With an eye toward the economic reality of the situation, the Court is inclined to agree that "nothing magical happened at 8:00 P.M. transforming plaintiff from an employee to an independent contractor." (Pl. Opp. at 5). Under the totality of the circumstances and in light of FLSA's broad scope, the Court finds that Luna was an employee during her work as an overnight attendant.

2. NYLL

Although the test under the NYLL is "substantially similar to the FLSA, the common law focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." Hart, 967 F. Supp. 2d at 923 (internal citations and quotation marks omitted); see Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) ("New York law focuses on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."). The New York Court of Appeals has articulated five factors to determine whether a worker is an employee, including "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Landaeta, 2014 WL 836991, at *4 (quoting Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003)). "[A]s in the FLSA inquiry, it is not significant how the parties defined the employment relationship or how the worker identified herself on tax forms." Hart, 967 F. Supp. 2d at 924.

The second, third, and fourth factors tend to favor Defendants because Luna was not required to work exclusively at HDMP, she did not receive benefits in connection with the overnight attendant position, and "due to the very payroll practices at issues in this lawsuit" she was not on payroll as an overnight attendant. Id. at 925. These particular factors, however, offer somewhat limited insight into the substantive question of employment status. Many workers who are free to take on other jobs, "such as waiters or bartenders," are employees under the NYLL. Id. Additionally, to place great weight on the allocation of benefits or the use of certain tax forms "would effectively allow any employer to control, under New York law, a worker's status simply by labeling her an independent contractor and denying her employee benefits." Id.

The first and fifth factors, by contrast, substantively address the control an employer exercises over a particular worker. Though the requirements of an overnight attendant are few, Defendants dictated all tasks (if not their order), including being present and available on the premises at all times. Moreover, even assuming a measurable reduction in workload from day to night, Luna as a general matter continued to be responsible for dogs at the same facility. Finally, "[n]otwithstanding the separate NYLL inquiry, the Court is. . . mindful" of "general support for giving FLSA and the [NYLL] consistent interpretations." Id. (internal quotation marks omitted) (collecting cases). Accordingly, based on the material facts not in dispute, the Court finds that Luna was an employee during the overnight shifts under the NYLL.

### B. FLSA and NYLL: Minimum Wage Claims

The FLSA and NYLL mandate that employers pay a statutory minimum wage of $7.25 an hour. See 29 U.S.C. § 206(a); N.Y. Lab. Law § 650 et seq.; Villegas v. Monica Rest. Corp., No. CV-12-4131 (VVP), 2013 WL 4046261, at *4 (E.D.N.Y. Aug. 8, 2013) ("From August 17, 2009 to the present, both the FLSA and the NYLL have provided the same minimum wage of $7.25."). The rate is determined on a weekly basis. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960) (FLSA's "purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute"); 12 N.Y.C.R.R. 146-2.9 ("The minimum wage provided by this Part shall be required for each week of work, regardless of the frequency of payment.").

Luna claims that Defendants violated minimum wage requirements with regard to two overnight shifts, on April 3 and 18, 2013, where HDMP improperly treated her as an independent contractor and paid a fixed amount per boarded dog. (Compl. ¶ 6; Pl. 56.1 Add. ¶¶ 1, 2). Defendants state that HDMP was nevertheless in compliance because Luna received a total

10

compensation of $319.50 for all of her overnight shifts, which exceeded the minimum wage in aggregate. (Wellner Decl. Ex. 4 at 1.). As noted, however, compliance with the minimum wage requirement is determined on a weekly basis. During the week of April 14, 2013, Luna worked 15 hours of daytime shifts at a contracted rate of $8 per hour, (Luna Aff. ¶¶ 5, 6), for a total of $120. She also received $75 for an 11-hour overnight shift on April 18. (Luna Aff. ¶ 8; Defs. 56.1 ¶ 28). Luna therefore worked a total of 26 hours that week and received $195, for an effective rate of $7.50 per hour – exceeding FLSA's minimum wage requirement.

The week of March 31, 2013, presents a more complicated picture. Luna worked 20 hours during the day at a contracted rate of $8 per hour, (Luna Aff. ¶¶ 5, 6), for a total of $160. She also received $59 for an 11-hour overnight shift on April 3. (Defs. 56.1 ¶ 28). Accordingly, Luna worked a total of 31 hours that week and received $219, for an effective rate of $7.06 per hour – which falls just below minimum wage. A three-hour shift during that week is the subject of material dispute between the parties. Defendants contend that Luna was gratuitously paid for mistakenly working Thursday, although "we didn't need her and were already fully staffed . . . incurring extra payroll cost to pay the staff who covered her shift" scheduled for Friday. (Cheng Aff. ¶ 27; Wellner Decl. Ex. 4 at 1). Luna concedes that she was scheduled to work on Friday, but argues that when she mistakenly arrived on Thursday, she worked a full shift and Cheng excused her from coming in the next day. (Luna Aff. ¶ 21). Resolving all ambiguities in favor of the non-movant, the Court finds that Luna's FLSA and NYLL wage claims survive summary judgment with regard to the week of March 31, 2013.

C. **NYLL: Spread-of-Hours Claim**

"The NYLL requires an employer to pay its employees a 'spread-of-hours' premium for each workday that an employee labors in excess of ten hours . . . equal to one hour of pay at the

11

state statutory minimum rate." Peralta v. M & O Iron Works, Inc., No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *8 (E.D.N.Y. Mar. 12, 2014) (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4). The undisputed facts show that Luna worked more than ten hours when she had an overnight shift. Summary judgment therefore is denied as to her spread-of-hours claim.

### D.  FLSA and NYLL: Retaliation Claims

The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). While the term "filed any complaint" has been interpreted broadly to include "oral as well as written complaints," Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1329 (2011), "the Second Circuit's holding that internal complaints to an employer are not protected by the FLSA remains controlling law in the circuit," Eschmann v. White Plains Crane Serv., Inc., No. 11-CV-5881 (KAM) (VVP), 2014 WL 1224247, at *11 (E.D.N.Y. Mar. 24, 2014). In contrast, the NYLL "explicitly covers complaints made to an employer, and therefore offers broader coverage [than the] FLSA." Flick v. Am. Fin. Resources, 907 F. Supp. 2d 274, 279 (E.D.N.Y. 2012); see N.Y. Labor L. § 215(1)(a).

At the summary judgment stage, courts analyzing retaliation claims under the FLSA and NYLL apply the familiar burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Crawford v. Coram Fire Dist., No. 12 CV 3850 (DRH) (WDW), 2014 WL 1686203, at *5 (E.D.N.Y. Apr. 29, 2014). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Mullins

v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action." Id. (internal quotation marks omitted). If the defendant meets this burden, the plaintiff must respond with "sufficient evidence to support a rational finding that the legitimate, non-[retaliatory] reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (bracketing altered).

1. **Prima Facie Case**

Defendants do not appear to contest the first and second elements of Luna's prima facie case. Instead, the crux of their argument is that Luna has not shown a causal connection between her complaints and the termination. (Defs. Mem. at 15). Such a connection, however, "may be established . . . by showing that the protected activity was closely followed in time by the adverse action." Mullins, 626 F.3d at 53 (internal citations and quotation marks omitted). An email exchange between Luna and Cheng concerning some of the disputed employment practices is dated May 2, 2013, just four days before the termination. (Wellner Decl. Ex 2). In contrast, Luna does not specify the date she complained to the DOL. Still, drawing all inferences in Luna's favor, a complaint to the DOL at any point during her brief employment at HDMP would necessarily be closely followed in time by her termination. The Court therefore finds that Luna has established a prima facie case of retaliation under the FLSA and NYLL.

2. **Legitimate Reasons for Termination**

In response, Defendants have proffered a legitimate non-retaliatory reason for Luna's termination: poor performance. Luna disputes Defendants' contentions (which are supported by sworn affidavits from several HDMP workers) that she refused to bathe the dogs, encouraged

13

others to similarly refuse, demanded some form of revenue-sharing for the baths, and caused a scene or disrupted the dogs while arguing with Cheng. Luna admits, however, that she once arrived and worked on the wrong day, that she failed to return a client's keys after dropping off a dog (so that HDMP could not retrieve the dog the next morning), that a dog was injured during her shift, and that she failed to crate another dog after she dropped it off at a client's home despite written instructions. Defendants have sufficiently carried their burden.

### 3. Pretext

Luna therefore must offer sufficient evidence that, more likely than not, retaliation was the real reason for her termination. Temporal proximity, "without more," is insufficient to satisfy a plaintiff's burden at this stage of the inquiry. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam). Luna instead appears to rely exclusively on an uncertified transcript of what purports to be her recorded conversation with Cheng on the day she was terminated. (Decl. of Stuart Lichten, dated Oct. 23, 2013 ("Lichten Decl."), Ex. A). Defendants argue that this transcript is inadmissible. (Defs. Reply at 2-4).

Generally, "the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). The offering party must authenticate the evidence by offering proof "sufficient to support a finding that the matter in question is what the proponent claims it is." Fed. R. Evid. 901(a). In his declaration, Luna's counsel writes the following: "Attached as Exhibit A is a transcript of an audiotape which is in my possession." (Lichten Decl. ¶ 2). Luna's affirmation adds only that she "approached Cheng . . . between 4:30 P.M. and 5:00 P.M." on May 6, 2013, and "tape recorded the discussion." (Luna Aff. ¶¶ 19, 20). These statements are

14

insufficient as basis for authenticating the transcript, which the Court finds inadmissible in its current form.

However, given the fact that discovery has not yet commenced, that the motive for termination is pivotal in this case, and that "a primary purpose of antiretaliation provisions" is to "[m]aintain[] unfettered access to statutory remedial mechanisms," Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997), the Court elects to defer decision on Luna's retaliation claims. See Fed. R. Civ. P. 56(d), (e).

### E. NYLL: Retaining of Gratuities Claim

Luna also alleges that Defendants violated the NYLL by retaining her gratuities. For a violation of New York Labor Law § 196-d to exist, "the employer must retain a portion of the gratuities by keeping them as profit, using those monies for operating costs, or distributing those monies to employees who are not otherwise eligible to receive gratuities." Elliott v. Leatherstocking Corp., No. 3:10-cv-934, 2011 WL 1431618, at *4 (N.D.N.Y. Apr. 14, 2011).

Defendants state that HDMP pools tips for all services except dog baths and distributes the funds to staff at each quarterly meeting based upon the number of hours each staff member has worked. Defendants further indicate that Cheng does not participate in the pool, nor does HDMP use any of the money to cover its own expenses. (Def. 56.1 ¶ 18). Luna responds that she does not have "sufficient information to admit or deny" HDMP's tip policy, (Pl. 56.1 ¶ 18), and that Cheng never informed her the tip money was available, (Pl. 56.1 ¶ 56). Although the Court is skeptical of Luna's position, especially in light of the notice Defendants sent to Luna's attorney, (Wellner Decl. Ex. 4 at 2), Luna has not been afforded discovery as to HDMP's records concerning tip policy. Accordingly, the Court defers consideration of this claim.

15

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Docket No. 12) is granted in part, denied in part, and deferred in part:

1. summary judgment is granted in part as to Plaintiff's FLSA and NYLL minimum-wage claims, which survive only with regard to the week of March 31, 2013;

2. summary judgment is denied as to Plaintiff's NYLL spread-of-hours claim; and

3. the Court finds that Plaintiff has set forth a prima facie case for retaliation under the FLSA and NYLL, but defers consideration of these claims, as well as Plaintiff's NYLL tip retention claim, pending the outcome of discovery.

The parties are directed to contact Magistrate Judge Robert M. Levy's chambers within two weeks of the date of this memorandum and order to address the discovery schedule and to revisit the possibility of settlement.

**SO ORDERED.**　　　　　　　　　　/s/(SLT)

　　　　　　　　　　　　　　　　　/SANDRA L. TOWNES
　　　　　　　　　　　　　　　　　United States District Judge

Dated: August 27, 2014
　　　　Brooklyn, New York